IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW J. BRUNNER, )
)
    Plaintiff, )
)
vs. ) Civil Action No. 20-842
)
ANDREW SAUL, )
*Commissioner of Social Security*, )
)
    Defendant. )

ORDER

AND NOW, this 2nd day of July, 2021, having considered the parties' summary judgment motions, the Commissioner of Social Security's ("Commissioner") final decision, and the record, the Court will partially grant Defendant's motion.[1] Substantial evidence supports the Commissioner's decision denying Plaintiff's application for disability insurance benefits, pursuant to Title II of the Act, 42 U.S.C. § 401 *et seq*. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).[2]

---

[1] Plaintiff asks the Court to reverse the Commissioner's decision and award benefits under the Social Security Act ("Act") or reverse the decision and remand for further administrative proceedings. Defendant seeks affirmance of the Commissioner's decision. Plaintiff has additionally requested reasonable attorney fees and Defendant has asked for costs, but the parties have not addressed these secondary requests in the briefs. Therefore, the Court will not address attorney fees or costs, *see Pa. Dep't of Public Welfare v. U.S. Dep't of Health & Human Servs.*, 101 F.3d 939, 945 (3d Cir. 1996), and will grant Defendant's summary judgment motion in part.

[2] In the administrative proceedings that preceded Plaintiff's complaint, the Commissioner found Plaintiff not disabled. (R. 21). The Administrative Law Judge ("ALJ") determined Plaintiff was capable of "medium work," 20 C.F.R. § 404.1567(c), subject to slight modifications, despite suffering from "osteoarthritis of the left shoulder, status post rotator cuff tear and impingement with decompression surgery." (R. 15, 16). With the assistance of a Vocational Expert ("VE"), the ALJ determined Plaintiff could work as a patient transporter, dining room attendant, and packager with his remaining work ability, *i.e.*, his residual functional

capacity ("RFC"). (R. 21). Plaintiff challenges that decision, arguing the ALJ failed to: account for all severe medically determinable impairments and limitations arising therefrom, give appropriate credit to Plaintiff's orthopedic surgeon's opinion, support the RFC determination with substantial evidence, and present appropriate hypothetical questions to the VE. The Court is unpersuaded of the ALJ's error and finds his decision is supported by substantial evidence.

Plaintiff has been diagnosed with arthritis, and he argues the ALJ erroneously found his arthritis did not constitute a severe, medically determinable impairment. ALJs identify severe, medically determinable impairments at the second step of the "familiar five-step analysis" used to evaluate disability. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citing 20 C.F.R. § 404.1520(a)(4)). Claimants bear the burden of proof in the first four steps. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144 (3d Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). Impairments are severe when they "significantly limit[] the claimant's physical or mental ability to do basic work activities." *Hess*, 931 F.3d at 201 (citing 20 C.F.R. § 404.1520(c)). Because claimants are propelled to the third step when the ALJ finds even one severe, medically determinable impairment, failure to correctly identify a second, third, or fourth severe impairment is harmless. *Salles*, 229 F. App'x at 145 n.2.

Here, the ALJ deliberated over counting arthritis among Plaintiff's severe, medically determinable impairments. The ALJ observed that Plaintiff was diagnosed with arthritis in March 2018. (R. 15). The ALJ also considered Plaintiff's testimony regarding joint pain (R. 15) and Plaintiff's course of treatment, that is, his prescription for a cream to reduce swelling. (R. 16). From these records, the ALJ determined there was a lack of "significant medical treatment" and "objective medical evidence" that might have indicated arthritis significantly limited Plaintiff for at least the minimum duration of time required. (R. 16). Based on these considerations, the ALJ decided against considering the arthritis a severe, medically determinable impairment, but indicated he would include limitations arising therefrom toward the RFC formulation. (R. 16).

Plaintiff contends that the evidence shows Plaintiff's arthritis was severe and, further, that the ALJ did not make up for his failure to consider it so by later including it in the RFC determination. In support of his argument, he asserts that this was a diagnosed condition, that he showed his swollen hands to the ALJ at the hearing, and that the ALJ failed to account for his lack of medical insurance and limited treatment options when the ALJ found a lack of medical treatment undermined the severity of the condition. (Doc. No. 15, pgs. 8—9). The Court is unconvinced of any error. A medical diagnosis does not establish the presence of a severe, medically determinable impairment. *See Salles*, 229 F. App'x at 145; *Kesler v. Comm'r of Soc. Sec.*, 2015 WL 1444347, at *1 n.1 (W.D. Pa. Mar. 30, 2015); *Faircloth v. Colvin*, No. 12CV1824, 2013 WL 3354546, at *11 (W.D. Pa. July 3, 2013). As Defendant points out, the ALJ did not note for the record an observation that Plaintiff's hands were swollen at the hearing. (Doc. No. 17, pg. 12 (citing R. 40)). Further, treatment history is a permissible consideration when an ALJ assesses the severity of a claimant's impairments because seeking, following, or changing treatment "may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

Plaintiff is correct that, when considering a modest treatment history, ALJs must also "acknowledge[] and consider[] possible explanations for the course of treatment." *Grissinger v. Colvin*, No. CV 15-202, 2016 WL 5919937, at *3 (W.D. Pa. Oct. 11, 2016). However, in this matter the ALJ acknowledged that Plaintiff did not obtain insurance until 2018. (R. 18). According to Plaintiff's testimony, he obtained insurance "about four months" prior to his November 2018 hearing. (R. 37). Considering Plaintiff was diagnosed with arthritis in March 2018, the ALJ's observation concerning Plaintiff's lack of treatment for arthritis largely pertains to a time when Plaintiff was insured. Most importantly, even if it was evident to the Court that the ALJ *should* have found Plaintiff's arthritis severe at step two, any such error would be harmless because the ALJ found another severe, medically determinable impairment— osteoarthritis in Plaintiff's left shoulder. (R. 15). The ALJ assured Plaintiff he would consider the evidence of Plaintiff's arthritis "in combination with the claimant's other impairments in reaching the residual functional capacity." (R. 15—16). The decision demonstrates the ALJ followed through on that guarantee and the ALJ did in fact consider evidence of Plaintiff's joint pain toward the RFC determination. (R. 17—18). Therefore, no harmful error requiring reversal occurred at step two of the ALJ's analysis.

Plaintiff next argues that the ALJ did not afford sufficient weight to a medical opinion provided by his orthopedic surgeon. Plaintiff presents this argument independently, but also reiterates it as part of his argument that the RFC is unsupported by substantial evidence. (Doc. No. 15, pgs. 9, 12). Therefore, the Court will address whether the ALJ afforded the orthopedic surgeon's opinion appropriate weight together with Plaintiff's other arguments against the sufficiency of the RFC. ALJs formulate a claimant's RFC as part of the fourth step of the five-step analysis. *Hess*, 931 F.3d at 202 n.2 (treating the RFC assessment "as part of step four" despite ambiguity in the case law as to whether it is an intermediate step between steps three and four). Determining a claimant's RFC, *i.e.*, the most work a claimant can do, facilitates the ALJ's consideration of whether the claimant can return to past work or "adjust[] to other work" as determined at steps four and five, respectively. *Id.* at 201—02. When the ALJ considers what limitations are appropriate for a claimant's RFC, he considers limitations arising from both severe and non-severe impairments. SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996).

ALJs must consider all evidence in their formulation of the RFC. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). When the ALJ considers a claimant's testimony about his symptoms and limitations, the ALJ will credit that testimony to the extent the claimant's alleged symptoms "could reasonably be expected" to arise from documented medical impairments. 20 C.F.R. § 404.1529(a). The ALJ also considers objective medical evidence and medical opinion evidence to understand how severe symptoms are and how they affect the claimant. SSR 16-3p. The RFC the ALJ arrives at must be supported by substantial evidence. *Pecoraro v. Berryhill*, No. CV 17-912, 2018 WL 4334620, at *1 n.1 (W.D. Pa. Sept. 11, 2018). Further, to make sure that reviewing courts can assess RFC determinations, ALJs must provide adequate explanation for their findings, including why they rejected evidence. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Decisions must be detailed enough to permit review, though ALJs need not "adhere to a particular format in conducting [their] analyses." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Plaintiff's first argument against the ALJ's RFC determination is that the ALJ afforded insufficient weight to the 2015 opinion provided by Plaintiff's orthopedic surgeon, Dr. Thomas. Plaintiff argues Dr. Thomas's opinion was entitled to great weight pursuant to the treating physician doctrine which applies to claims, like this one, that were filed before March 27, 2017. 20 C.F.R § 404.1527(c)(2). According to the treating physician doctrine, medical opinion evidence offered by "treating sources" is to be afforded "more weight" than other opinion evidence because treating physicians are thought to be "most able to provide a detailed, longitudinal picture of . . . medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Id.* Pursuant to the doctrine, when a treating source offers an opinion "on the issue(s) of the nature and severity of [the claimant's] impairment(s)" and that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record" it is to be afforded "controlling weight." *Id.* However, ALJs are empowered to reject treating physician opinions to resolve conflicts in evidence. *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). Only they may not "reject evidence for no reason or the wrong reason." *Id.* (citing *Cotter*, 642 F.2d at 707).

Plaintiff's orthopedic surgeon, Dr. Thomas, treated Plaintiff for his left shoulder injury from 2014 to 2015. (R. 17 (citing Ex. 3F at R. 307—17)). He performed a "left shoulder arthroscopic subacromial decompression and debridement for impingement and adhesive capsulitis and irreparable rotator cuff rear [sic] in April 2014." (R. 17 (citing Ex. 3F at R. 309)). The results of the procedure were "satisfactory," and, with physical therapy, Plaintiff achieved "full range of motion of the left shoulder" despite suffering some persistent weakness. (R. 18 (citing Ex. 3F at R. 316)). Though the surgery was largely successful, Dr. Thomas opined Plaintiff would not be able to return to "heavy" work. (R. 19 (citing Ex. 3F at R. 317)). One year after the operation, Dr. Thomas noted that Plaintiff "continue[d] to be weak," but understood that was just "the way it is," and indicated he could work "light duty." (R. 317; R. 19 (citing Ex. 3F at R. 317)). It is clear from Dr. Thomas's opinion that he did not believe Plaintiff could return to the physically demanding work he had performed prior to his injury, delivering sofas, refrigerators, kitchen cabinets, and the like. (R. 32).

The ALJ considered this opinion but decided against affording it "great weight" for several reasons. (R. 19). Dr. Thomas's opinion was dated—it reflected Plaintiff's condition in 2015, only one year after Plaintiff's injury and surgery. (R. 19). The ALJ credited Dr. Thomas's opinion that Plaintiff could not return to his past work or other "heavy work," but not Dr. Thomas's opinion concerning "light duty" work because the latter seemed vague and not consistent with the comment regarding "heavy work." (R. 19). The ALJ further observed that Dr. Thomas had not detailed what he believed Plaintiff's limitations to be, that is, he had not provided a detailed assessment of Plaintiff's functional limitations or other explanation for his opinion. (R. 19). To the extent that Dr. Thomas's opinion contained a statement that Plaintiff could not lift more than a half-gallon of milk with his left arm, the ALJ found that was simply a recording of Plaintiff's statement, not a medical opinion. (R. 19).

4

The Court is satisfied that the ALJ provided reasons for not fully crediting Dr. Thomas's opinions and that those reasons are not wrong. *See Mason*, 994 F.2d at 1066. As the ALJ explained, the opinion is from 2015, and it is also divorced from the context of a disability determination. Considering the circumstances, the ALJ was reasonable to find Dr. Thomas's reference to "light duty" vague. Dr. Thomas's failure to offer an explanation in support of his opinion is a valid reason to afford the opinion less value that it would otherwise receive. *See* 20 C.F.R § 404.1527(c)(2); *see also Plummer*, 186 F.3d at 429. Dr. Thomas's mention of Plaintiff not being able to lift more than a half-gallon of milk is also unexplained and appears to be a restatement of Plaintiff's own representation of his abilities. Recordings of claimant complaints in a medical opinion are not "entitled to any weight." *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005). The ALJ also explained that he found Dr. Thomas's opinion inconsistent with the consultative examiner's opinion. (R. 19). The ALJ was entitled to favor the latter over the former based on their respective consistency with other evidence in the record. *See Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000). These reasons for not affording Dr. Thomas's opinion greater weight are well explained. Additionally, it was not incumbent upon the ALJ to seek out Dr. Thomas for clarification of his opinion because it was vague, inconsistent, and lacking in analysis. *See Vargas v. Berryhill*, No. 3:16-CV-02003, 2018 WL 1938312, at *7 (M.D. Pa. Mar. 13, 2018), *report and recommendation adopted*, No. 3:16-CV-2003, 2018 WL 1932879 (M.D. Pa. Apr. 24, 2018) ("When an ALJ does not express 'confusion' about a treating source statement, but, instead, concludes that it lacks proper support, there is no reason to recontact the physician.").

Next, Plaintiff argues the RFC is unsupported by substantial evidence because the ALJ did not provide a function-by-function analysis. However, ALJs are not required to conform their decisions to a particular format. *Jones*, 364 F.3d at 505. Function-by-function analyses are welcome, but not required so long as there is "sufficient development of the record and explanation of findings to permit meaningful review." *Id*. A detailed "explanation of the substantial evidence upon which [the RFC determination] relies" is adequate. *See Brooks v. Saul*, No. CV 19-2855, 2019 WL 7048794, at *7 (E.D. Pa. Dec. 23, 2019). Here, the ALJ clearly stated the RFC formulation and laid out the evidence in support of it. (R. 16—19). He also explained why he rejected evidence or assigned less value than Plaintiff would have hoped to certain evidence. There is no error in his omission of a function-by-function analysis.

Plaintiff also argues that the ALJ erred in formulating his RFC insofar as the ALJ incorrectly assessed Plaintiff's symptoms, drew improper inferences, and omitted appropriate limitations. The Court has reviewed the record and does not find such errors. When it comes to evaluating a claimant's alleged symptoms, ALJs first discern whether a claimant is suffering from a medically determinable impairment that "could reasonably cause the alleged symptoms," and then "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 494 (W.D. Pa. 2005). Regarding inferences, ALJs may make inferences about symptom severity from a claimant's treatment record when they also consider reasons—other than the absence of suffering—that might have prevented more significant treatment. *Grissinger*, 2016 WL 5919937, at *3. As to whether all appropriate limitations have been included in an RFC

determination, the Court reiterates that claimants carry the burden of proof through the fourth step of the disability evaluation. *Plummer*, 186 F.3d at 428.

Considering Plaintiff's argument that the ALJ failed to correctly assess Plaintiff's symptoms, the Court disagrees, and finds the ALJ considered Plaintiff's testimony appropriately in light of the rest of the record. The ALJ specifically considered Plaintiff's testimony that he suffered from "hand and joint pain" and that "his hands swell and he has difficulty holding items, and he is prescribed cream." (R. 17). The ALJ compared these representations to Plaintiff's testimony about his daily activities which included shopping, occasional cooking, some cleaning, driving, personal grooming, and dressing. (R. 17). The ALJ found these daily activities served to undermine Plaintiff's testimony regarding the alleged severity of his symptoms and functional limitations. The ALJ also considered the objective medical evidence in the record, from Plaintiff's 2014 shoulder operation and recovery through his March 2018 visit to his primary care physician ("PCP"). The ALJ noted that after Plaintiff's corrective surgery in 2014, he achieved "maximum medical improvement" by 2015, at which point he demonstrated "full range of motion of the left shoulder" despite some persistent weakness. (R. 18). Plaintiff did not complain of any pain in his left upper extremity when he saw his PCP in 2018, though his PCP did note stiffness associated with arthritis at the time. (R. 18). Finally, the ALJ considered the medical opinion evidence in the record, including Dr. Berg's consultative examination in February 2017. In his findings, Dr. Berg noted a lack of acute distress, normal ambulation and gait, full squat, full range of motion in the left shoulder, a slightly deficient range of motion between the right elbow and wrist, five out of five strength in the upper and lower extremities and five out of five grip strength bilaterally. (R. 18 (citing Ex. 4F at R. 318—34)). He opined modest work restrictions would be appropriate for Plaintiff. (R. 324—27) (finding Plaintiff could lift and carry up to fifty pounds frequently). The ALJ afforded this opinion great weight because Dr. Berg had the opportunity to examine Plaintiff and because Dr. Berg's opinion was consistent with his findings. (R. 19). The ALJ also considered Dr. Thomas's opinion and opinions provided by the State agency medical consultant, Dr. Mortimer, and Plaintiff's physical therapist, affording the latter two great weight. (R. 19). Dr. Mortimer opined that Plaintiff was capable of medium work with some additional limitations, and the physical therapist recommended against a return to heavy lifting. (R. 19).

Looking at all the evidence, the ALJ explained his finding that Plaintiff's symptoms were not as severe as he alleged. (R. 18). For example, the ALJ found Plaintiff's representation of symptoms arising from his shoulder injury were undermined by Plaintiff's daily activities such as mowing the lawn, working on his car, and grooming himself, as well as by the lack of treatment since 2015 (R. 18) just as he had found other symptoms were undermined by Plaintiff's dressing, cooking, and shopping. (R. 17). The ALJ also found Plaintiff's testimony was contradicted by Plaintiff's 2018 medical records wherein he denied any "chronic medical conditions" to his PCP. (R. 18). Based on this review of the evidence, the ALJ found Plaintiff's RFC should be fixed at medium work without kneeling, crouching, crawling, or climbing ladders, ropes, or scaffolds. (R. 16). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). The ALJ further limited Plaintiff to occasional climbing ramps and stairs and occasional balancing, as well as avoidance of exposure to extreme hot and cold, vibration,

wetness, humidity, and environmental irritants. (R. 16). Finally, he limited Plaintiff's overhead reaching to never with his left upper extremity and restricted Plaintiff to only routine and repetitive tasks. (R. 16). The Court is satisfied that this analysis reflects appropriate consideration of Plaintiff's testimony and does not include improper, unsupported inferences. As is required, the ALJ considered whether Plaintiff's alleged symptoms were borne out by the other evidence in the record and found they were not. He considered Plaintiff's sparse treatment record, but acknowledged Plaintiff lacked insurance for a time. In the end, the ALJ included all limitations he found supported in the record in Plaintiff's RFC determination, and this Court's review of the record has not revealed an oversight or unresolved evidentiary conflict that might undermine the ALJ's decision.

To the extent Plaintiff argues a stooping limitation should have been included in the RFC, he has failed to point to evidence that would support such a limitation. The Court understands why Plaintiff might challenge the absence of a stooping limitation, as the ALJ included a stooping limitation in the first hypothetical question he posed to the VE and then struck it from the second hypothetical. (R. 52). In response to the first hypothetical, the VE testified that the stooping limitation would rule out all medium work. (R. 52). When the ALJ subsequently removed the stooping limitation, the VE found jobs available to Plaintiff and further testified that many of those jobs would continue to be available to Plaintiff even with the addition of an overhead-reaching limitation. (R. 52—53). Plaintiff argues the ALJ only removed the stooping limitation because it became clear that such a limitation would rule out all medium work. (Doc. No. 15, pg. 13). However, there is no evidence that the ALJ removed the stooping limitation from the hypothetical for any improper purpose. ALJs are not obligated to include any limitations in the hypothetical questions that are not "credibly established." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Jones*, 364 F.3d at 506 (explaining that ALJs may "disregard" responses to hypothetical questions that are not borne out by the record). And Plaintiff has not argued that the record supports a stooping limitation. *See* (R. 41, 46 (Plaintiff testifying that he was "fatigued" and experienced "nerve pain" in his feet and joints, as well as hip, knee, shoulder, and neck pain, but nowhere alleging difficulty stooping)). Therefore, Plaintiff cannot prevail in arguing it was error for the ALJ to omit a stooping limitation from the RFC or hypothetical.

Plaintiff's final argument—that the hypothetical questions did not accurately reflect Plaintiff's impairments—is admittedly a restatement of Plaintiff's challenge to the ALJ's RFC determination. (Doc. No. 15, pg. 14); *Rutherford*, 399 F.3d at 554 n.8 (explaining that whether a Plaintiff challenges the limitations included in the RFC or the limitations that were presented to the VE in a hypothetical question, those are just different ways of framing an RFC challenge). Plaintiff here argues the ALJ erred in failing to include limitations on hand manipulation and fingering as well as off-task time. (Doc. No. 15, pg. 15). As discussed at length *supra*, the ALJ rejected Plaintiff's testimony about difficulty with his hands because of his daily activities and afforded great weight to opinions that Plaintiff's use of his hands was totally unrestricted. *See* (R. 326—Dr. Berg Opinion). Plaintiff predicates his off-task time argument solely on his testimony that he required a daily nap between one and two hours, but he has not identified other evidence in the record that demonstrates his alleged off-task time limitation is "credibly established." *Rutherford*, 399 F.3d at 554. Therefore, Plaintiff has not demonstrated that it was

7

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 16) is GRANTED in part and DENIED in part.

/s Alan N. Bloch<br>
United States District Judge

ecf:   Counsel of Record

---

error for these additional limitations to be omitted from the hypothetical questions presented to the VE.

Before concluding the brief, Plaintiff briefly characterizes the VE's testimony as too "confused and inconsistent" to be relied upon. (Doc. No. 15, pg. 15). However, it is clear to the Court that this challenged portion of the VE's testimony—wherein she explained that a general limitation on reaching with the left upper extremity would rule out all medium work, but a limitation on *overhead* reaching meant three jobs were available to Plaintiff (R. 52—54)—is neither confused nor inconsistent. In any event, this last challenge lacks adequate development for the Court to consider it. *Salyards ex rel. Pittinger v. Astrue*, No. CIV.A. 11-151, 2013 WL 53728, at *2 (W.D. Pa. Jan. 3, 2013) (explaining that an issue is not raised to the court "[i]n the absence of any substantive or meaningful analysis"). Accordingly, the Court finds the ALJ's decision is supported by substantial evidence and will affirm it.